THE CHOTINER FIRM
By L. Kenneth Chotiner, LL.M.
ID No. 77451
1818 Market Street, Ste. 3740
Philadelphia, PA 19103
215.564.6544

Attorneys for Plaintiff

MASTER WEINSTEIN SCHATZ MOYER, P.C.
By STEVEN J. SCHATZ, ESQUIRE
ID No. 84509
1818 Market Street, Suite 3620
Philadelphia, PA 19103
215.561.2800

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHUKUN TIEN<br><br>Plaintiff<br><br>Vs.<br><br>THE CITY OF PHILADELPHIA, POLICE OFFICER, BRIAN REYNOLDS, BADGE NUMBER 4268, POLICE OFFICER THOMAS LICIARDELLO, BADGE NUMBER 4383, POLICE OFFICER MICHAEL SPICER, BADGE NUMBER 5180, POLICE OFFICER BRIAN SPEISER, BADGE NUMBER 7169, POLICE OFFICER JACKSON, BADGE NUMBER 6360, AND POLICE OFFICERS JOHN DOE NUMBERS 1 THROUGH TEN, BADGE NUMBERS UNKOWN<br><br>Defendants | CIVIL ACTION<br><br>No.: 13-CV-00705<br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

I.   JURISDICTION

    1.    This action is brought pursuant to 42 U.S.C. Sections 1983 and 1988, 28 U.S.C. §§ 1331 and 1343(1),(3),(4) and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, the Pennsylvania Constitution, and under the Common Law of the Commonwealth of Pennsylvania. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law.

II. PARTIES

2. Plaintiff, Shukun Tien, is a resident and citizen of the Commonwealth of Pennsylvania, 2256 Tyson Avenue, Philadelphia, Pennsylvania.

3. Defendant, City of Philadelphia, is a City of the First Class in the Commonwealth of Pennsylvania and a municipal corporation duly existing and organized under the laws of Pennsylvania with offices for service at 1515 Arch Street, Philadelphia, PA 19102. At all times relevant hereto, Defendant, City of Philadelphia, operated under the color of state law in creating and maintaining a Police Department and was the employer of all of the Police Officer Defendants in this action.

4. Defendant, Police Officer Brian Reynolds, Badge No.: 4268 ( "OFFICER REYNOLDS"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

5. Defendant, Police Officer Thomas Liciardello, Badge No.: 4383 ( "OFFICER LICIARDELLO"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

6. Defendant, Police Officer Michael Spicer, Badge No.: 5180 ( "OFFICER SPICER"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of

Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

7. Defendant, Police Officer Brian Speiser, Badge No.: 7169 ( "OFFICER SPEISER"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. She is being sued in both her individual and official capacities.

8. Defendant, Police Officer Jackson, Badge No.: 6360 ( "OFFICER JACKSON"), was at all times relevant to this Complaint, an Officer of the Police Department of Defendant, City of Philadelphia, and was acting in such capacity as the agent, servant, and or employee of the City of Philadelphia, by and through the Police Department, acting under the direction and control of the City of Philadelphia and its Police Department, and was acting pursuant to either official policies, statutes, ordinances, regulations, customs, practices and usages of the City of Philadelphia and its Police Department. He is being sued in both his individual and official capacities.

9. Defendants, John Doe, Number One through Ten, are factitious names of individuals heretofore unascertained that were at all times relevant to this Complaint, Police Officers for the City of Philadelphia and acted under the color of state law. They are being sued in both their individual and official capacities.

10. At all times material and relevant to this complaint, Defendant, City of Philadelphia, did act through its agents, employees, owners, representative, agents and/or employees while in the course and scope of their employment and/or agency.

11. At all times referred to herein, Defendants, acted under color of the laws, statutes ordinances, regulations, policies, customs, and usages of the Commonwealth of Pennsylvania, the City of Philadelphia and the Police Department of the City of Philadelphia, and pursuant to their authority as police officers of the City of Philadelphia and its police department.

## III.  FACTS

12. In January 2009, the Philadelphia Police Department adopted a written policy that requires supervisors to remove from all police paperwork the names of police witnesses who possess exculpatory information. In pertinent part, that policy states:

> Platoon commanders will be required to review and initial all arrest and investigative reports, including PARS reports[1], to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed.
>
> (See Memorandum (09-01)(the "Policy"), §III. A. (1), attached as Exhibit "A.")

The meaning of the phrase "successful outcome" is so obvious that it is not defined further. Id.

Pursuant to the Policy, Police supervisors are required to remove from all police paperwork the names of any police officer that witnessed events, which would be useful by a defendant in a criminal case, because such officers would not "ensure" a "successful outcome." In other words, the City of Philadelphia, by and through its Police Department, has adopted a written policy to enforce a code of silence or "blue code," which prohibits Officers from intervening or providing truthful information against constitutional violations and other unlawful misconduct committed by their fellow Officers.

13. According to police paperwork, the individual defendants, officers of the Narcotics Field Unit, executed a search warrant on 2256 Tyson Avenue on or about January 17, 2012.

14. In that paperwork, Defendant, P.O. Jackson, claims that, while executing the warrant, he observed Plaintiff bent over the toilet in the second floor bathroom flushing marijuana and ripped up pieces of paper, alleged tally sheets, along with urine. Defendant, P.O. Jackson's, allegations are not true.

15. In fact, Defendant, P.O. Jackson, did not recover any evidence that supports his claims.

---

[1] As the Court may be aware, the arrest and investigative reports, including PARS reports, are the police paperwork that is typically provided to an accused in a criminal case. It is this police paperwork that helps an accused identify, among others, police witnesses.

16.     Moreover, although defendants arrested Plaintiff, she was <u>not</u> charge with tampering with physical evidence in violation of 18 Pa.C.S.A. §4910.

17.     Instead, she was charged with Manufacture, Delivery or Possession with Intent to Deliver a Controlled Substance, conspiracy to commit same and other related charges.

18.     Based upon the charges and the defendants' allegations, Plaintiff's bail was originally set at 1.5 million dollars despite the fact that she has no prior criminal record.

19.     On April 16, 2012, Plaintiff was held for court on all but one of the charges.

20.     By letter dated December 3, 2012, Philadelphia District Attorney R. Seth Williams informed Commissioner Charles Ramsey that "the Philadelphia District Attorney's Office will no longer be using the following officers as witnesses in narcotics cases:

> Police Officer Thomas Liciardello
> Police Officer Brian Reynolds
> Police Officer John Speiser
> Police Officer Michael Spicer
> Police Officer Perry Betts
> Lieutenant Robert Otto

Also the Philadelphia District Attorney's Office will no longer accept any narcotics cases for charging when any of these police officers is a necessary witness. Finally, we will no longer approve any search or arrest warrants on narcotics cases when any of these officers is the affiant, nor if the probable cause portion of the warrant contains any averments from any of these officers." (A true and correct copy of the December 3, 2012, letter is attached as Exhibit "B.")

21.     Philadelphia District Attorney R. Seth Williams' letter implicitly attacks the veracity of the aforementioned officers, some of whom are defendants in this case.

22.     For example, Defendant, P.O. Brian Reynolds, is the affiant on the search warrant in this case. Moreover, the probable cause portion of the application contains averments from other officers who are Defendants in this case.

23.     On December 12, 2012, the Commonwealth moved to withdraw the charges.

24.     Plaintiff was incarcerated from January 18, 2012, until December 13, 2012.

## FIRST CAUSE OF ACTION
### EXCESSIVE USE OF FORCE BY DEFENDANTS COGNIZABLE UNDER 42 U.S.C. §1983

25. The allegations set forth in paragraphs one through twenty-four inclusive, are incorporated herein as if fully set forth.

26. At the time and date aforementioned, Defendants used unnecessary force on plaintiff by placing her in cuffs. Defendants' actions were unnecessary, unlawful, outrageous and intentional, and constituted an unlawful physical assault upon plaintiff.

27. At no time did plaintiff offer or commit any violence against defendants.

28. As a direct and proximate result of the aforesaid unlawful and malicious physical abuse of plaintiff by defendants, committed under color of law and under each individual defendant's authority as a police officer of the City of Philadelphia, plaintiff suffered harm and was deprived of her right to secure her person against unreasonable seizure of her person, and the excessive use of force violated his Fourth and Fourteenth Amendment Constitutional rights.

29. As a direct and proximate result of the malicious and outrageous conduct of Defendants, plaintiff suffered physical injuries, as well as psychological and emotional injuries, some or all of which may be permanent.

30. The acts of Defendants as aforesaid were wanton, malicious and oppressive, thus entitling plaintiff to an award of punitive damages against the defendants in their individual capacities.

WHEREFORE, plaintiff respectfully requests judgment in her favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

## SECOND CAUSE OF ACTION
### FALSE ARREST AND IMPRISONMENT BY DEFENDANTS UNDER 42 U.S.C. §1983

31. The allegations set forth in paragraphs one through thirty inclusive, are incorporated herein as if fully set forth.

32. The conduct of defendants resulted in plaintiff being falsely, maliciously, and unlawfully arrested, detained and prosecuted, and plaintiff was deprived of his rights as secured

by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, plaintiff respectfully requests judgment in her favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

## THIRD CAUSE OF ACTION
### STATE LAW CLAIM FOR ASSAULT AND BATTERY AGAINST ALL DEFENDANTS

33. The allegations set forth in paragraphs one through thirty-two inclusive, are incorporated herein as if fully set forth.

34. Defendants assaulted and battered plaintiff as aforesaid.

35. As a direct and proximate result of this assault and batter, plaintiff suffered damages as aforementioned throughout this complaint.

WHEREFORE, plaintiff respectfully requests judgment in his favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

## FOURTH CAUSE OF ACTION
### STATE LAW CLAIM FOR FALSE ARREST AND IMPRISONMENT AGAINST DEFENDANTS

36. The allegations set forth in paragraphs one through thirty-five inclusive, are incorporated herein as if fully set forth.

37. Defendants illegally arrested and imprisoned plaintiff in regard to the incident of January 17, 2012.

38. As a direct and proximate result of this false arrest and illegal imprisonment, plaintiff suffered damages as aforesaid.

WHEREFORE, plaintiff respectfully requests judgment in her favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. SECTION 1983 AGAINST THE CITY OF PHILADELPHIA FOR ITS FAILURE TO INVESTIGATE, TRAIN, SUPERVISE, AND/OR DISCIPLINE

39. The allegations set forth in paragraphs one through thirty-eight inclusive, are incorporated herein as if fully set forth.

40. Prior to January 17, 2012, the City of Philadelphia, including but not limited to the City of Philadelphia Police Department, developed and maintained policies or customs exhibiting deliberate indifference to the constitution rights of persons in Philadelphia, which caused the violations of plaintiff's civil rights.

41. It was the policy and/or custom of the City of Philadelphia, by and through its Police Department to inadequately and improperly investigate acts of misconduct by its officers, including defendant officer(s), such that these acts of misconduct were tolerated and known by the City of Philadelphia, including the incident involving plaintiff in this matter.

42. It was the policy and/or custom of the City of Philadelphia and its Police Department to inadequately supervise and train its police officers, including the defendant officer(s), thereby failing to adequately discourage further constitutional violations on the part of it police officers. The City of Philadelphia, by and through it Police Department, did not require appropriate in-service training or re-training of officer(s) who were known to have engaged in propensities for violence, unlawful arrests, unlawful detainments and unlawful behavior and further police misconduct.

43. As a result of the above described policies and customs, police officers of the City of Philadelphia and its Police Department, including the defendant officer(s), believed that his/their actions would not be properly monitored by supervisor officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

44. The above described policies and customs, police officers of the City of Philadelphia, by and through its Police Department, demonstrated an indifference on the part of policymakers of the City of Philadelphia and its Police Department to the constitutional right of person within the City of Philadelphia, and were the cause of the violations of plaintiff's rights alleged herein.

45. The acts and failures to act of Defendant, City of Philadelphia, by and through its Police Department, committed under color of law. As herein above set forth, deprived plaintiff of

his rights, privileges and immunities guaranteed to him as a citizen of the United States, in violation of 42 U.S.C. Sections 1981, 1983, 1985, 1986 and 1988, and deprived the plaintiff of rights guaranteed to him by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and the Pennsylvania Constitution.

WHEREFORE, plaintiff respectfully requests judgment in her favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

### SIXTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST INDIVIDUAL DEFENDANTS

46. The allegations set forth in paragraphs one through forty-six inclusive, are incorporated herein as if fully set forth.

47. The unlawful actions of defendants were intentional and/or reckless, constituting extreme and outrageous conduct which caused plaintiff to suffer severe and foreseeable emotional and physical injuries to his person.

48. Plaintiff re-alleges the damages as previously set forth.

WHEREFORE, plaintiff respectfully requests judgment in her favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances.

### SEVENTH CAUSE OF ACTION
### STATE LAW CLAIMS FOR MALICIOUS PROSECUTION AND ABUSE OF PROCESS

49. The allegations set forth in paragraphs one through forty-eight inclusive, are incorporated herein as if fully set forth.

50. On January 17, 2012, defendants, prosecuted, arrested, initiated, and charged plaintiff with several crimes in regard to the above mentioned incident.

51. Defendants falsely, maliciously, and with no probable cause arrested, charged, prosecuted, and initiated criminal proceedings against plaintiff in regard to the above mentioned incident.

52. Defendants intentional, malicious, willful, wanton, reckless, careless, and negligent acts, conduct and/or omissions, were without probable cause and were brought and continued for an improper purpose.

53. Defendants provided knowingly false and incomplete information in having plaintiff criminally charged and arrested on January 17, 2012, and intentionally and maliciously instituted, promoted, and participated in the confinement and prosecution of plaintiff. In so charging and alleging plaintiff of criminal action/behavior, defendants acted maliciously with the intent to injure the plaintiff, and are responsible for punitive as well as compensatory damages.

54. Moreover, defendants' ulterior motives were in exercising the illegal, perverted or improper use of process by continued promotion and participation in the prosecution of plaintiff as to the charges brought against him on January 17, 2012.

55. In so willfully, illegally, improperly and or perverting the use of process to accomplish a result outside its lawful scope against plaintiff, defendants caused plaintiff to suffer injuries to his person, property, and/or reputation as a result of their misuse of process.

56. As a direct and proximate result of this malicious prosecution and abuse of process, plaintiff suffered damages as aforesaid.

WHEREFORE, plaintiff respectfully requests judgment in her favor and against defendants for compensatory and punitive damages, plus costs of this action, attorneys fees, and such other relief as this Honorable Court deems fair and appropriate under the circumstances

## JURY DEMAND

57. Plaintiff demands a jury trial as to each Defendant and as to each count.

WHEREFORE, plaintiff respectfully requests this Honorable Court grant the relief herein requested.

Dated: April 24, 2013

THE CHOTINER FIRM

_____
L. KENNETH CHOTINER, ESQUIRE
Counsel for Plaintiff
1818 Market Street, Suite 3620
Philadelphia, PA 19103
215.564.6544

_____
MASTER WEINSTEIN SCHATZ MOYER, P.C.
STEVEN J. SCHATZ, ESQUIRE
Counsel for Plaintiff
1818 Market Street, Suite 3620
Philadelphia, PA 19103
215.561.2800

EXHIBIT "A"



PHILADELPHIA POLICE DEPARTMENT

MEMORANDUM (09-01)

(01-28-09)

SUBJECT: OVERTIME MANAGEMENT

I. POLICY

    A. Managing overtime costs are an essential element of supervisory and management responsibilities. The underlying goal of these procedures is to use overtime only when necessary; not to impede legitimate policing and investigative work. The following measures for all personnel in the Philadelphia Police Department (PPD) shall be implemented immediately. The purpose of these Department-wide procedures is to achieve uniformity in performance of our public service mission and to provide consistency in determining the need, use, distribution and management of overtime usage and in accordance with Directive 99 – "Overtime Pay and Compensatory Time" and Directive 13 – "Court Notices and Subpoenas."

II. PROCEDURES FOR NON-COURT OVERTIME

    A. Following the end of each pay period, the Administrative Service Bureau shall provide an overtime monitoring report to each unit detailing the use of overtime by type. A department summary will be provided to the Police Commissioner.

    B. The responsibilities set forth below outline general guidelines and procedures applicable to all police personnel receiving non-court overtime compensation, including but not limited to arrest, investigative and administrative overtime. These guidelines and procedures do not pertain to overtime used for special events or federally-funded task forces, unless otherwise ordered.

    C. Staffing should be planned so that most cases require only essential overtime. When significant and recurring overtime is required, other alternatives should be considered such as redistribution of workload, postponement of the work, or the use of temporary help. Overtime pay should not be used as a means to provide supplemental pay to an employee.

    D. Personnel members on less than full-duty status are not normally eligible for non-court overtime compensation. Exceptions may be requested through the chain of command for approval by the Deputy Commissioner for Organizational Support Services.

- 1 -



EXHIBIT A

E. Commanders/Managers shall be responsible for approving non-court overtime for employees within their respective unit, division or bureau. Approval may only be delegated in the manner listed below.

1. The Commanding Officer/Manager may give discretion to Platoon Commanders to approve discretionary overtime for two (2) hours.

2. The Commanding Officer must approve all overtime greater than two (2) hours and up to six (6) hours.

3. The Divisional Commanders (Inspector) must approve all discretionary overtime greater than six (6) hours.

F. Commanders/Managers shall approve all overtime assignments prior to overtime being worked by police personnel. Advance authorization is required for overtime usage, unless exigent public safety and/or emergency conditions exist which necessitate approval after overtime usage has occurred.

G. The Request to Work Non-Court Overtime Form (75-57) shall be available to all employees within each unit, and be completed by the employee working overtime.

1. Upon written approval (signature) by the respective Commanders, or designee as outlined above, for each unit, the Request to Work Non-Court Overtime Form (75-57) shall be attached to the Daily Attendance Record (DAR).

2. Commanding Officers will collect, maintain and store all Overtime Authorization Forms in a manner consistent with the retention of the DARs as defined in Directive 115 – "Records Retention and Disposition Protocol."

H. Commanders/Managers shall be provided with a report at the end of each pay period for the purposes of monitoring and reviewing the use of overtime. Corrective action shall be taken as appropriate to ensure the appropriate use of overtime. This is an essential managerial task, and must be done in conjunction with the approval process for all employees within each respective unit.

## III. PROCEDURES FOR COURT OVERTIME

A. Commanders/Managers shall also be responsible for reviewing and monitoring all court overtime for all employees in their respective units.

1. Platoon commanders will be required to review and initial all arrest and investigative reports, including PARS reports, to ensure that only those officers/investigators who are necessary for the successful outcome of the case are listed.

2. All reports should clearly articulate the facts and circumstances of each case. Platoon commanders are responsible for ensuring that reports comprehensively capture the exact actions relevant to that case for each personnel member listed, including the supervisor.

B. Supervisors shall ensure that they are directing an investigation appropriately and not placing themselves in a position that will require their testimony at a later date. A supervisor shall, upon receipt of any court notices requesting his/her presence, make this court notice known to his/her Commanding Officer.

C. Assigned investigative supervisors maintain the overall responsibility for case management, including the number of police personnel involved in each case. When feasible, the lead investigator, or co-investigator, will assume responsibility for handling multiple components of each case, including collecting physical evidence, writing property receipts, taking statements, and assuming the role of affiant on the search or arrest warrant. The narrative description included on all search or arrest warrants should match these assigned roles and responsibilities.

D. All court notices, especially Preliminary Hearings, will be reviewed by platoon supervisors to determine whether the subpoenaed member is necessary. Attention should also be paid to the number of personnel subpoenaed for a particular case as well as the number of consecutive days personnel are required to attend the same case.

*1
1. Whenever there appears to be unnecessary personnel requested on a case, the supervisor will contact the Overtime Management Unit (215-685-3674 or 75) to refer the case for their review.

2. Whenever there are six (6) or more personnel subpoenaed on the same case, the supervisor will contact the Overtime Management Unit to refer the case for their review.

E. When police personnel are subpoenaed for court on a Scheduled Day Off (SDO), the platoon supervisor shall initiate an immediate review of the case and arrest paperwork to determine the need for the officer's appearance. If it appears that the officer is unnecessary, the supervisor shall contact the Overtime Management Unit to refer the case for their review.

## IV. COMPLIANCE

A. All personnel who receive overtime compensation shall participate in managing usage in a manner that is consistent with the procedures outlined in this memorandum. Accountability for overtime usage rests with every individual member of the Department.

B. This department-wide procedure sets the minimum requirements that all members must follow. Since the functions and responsibilities vary within each unit of the Philadelphia Police Department, bureaus may establish additional standard operating procedures (SOP). Such procedures shall not override the requirements stated here. All such SOPs shall be forwarded to the newly created Division of Standards and Accountability.

C. Unit commanders shall be responsible for the following:

   1. Approving overtime requests in accordance with the procedures outlined in this memorandum.

   2. Tracking the use of overtime by assigned personnel.

   3. Reviewing and monitoring all overtime usage for their respective unit on a monthly basis.

D. The Division of Standards and Accountability, under the Office of Operational Coordination and Accountability shall be charged with the following:

   1. Monitoring, analyzing and ensuring compliance with appropriate overtime usage protocols.

   2. Reviewing all unit-generated procedures on overtime management and providing corrective feedback to ensure compliance with this document.

   3. Identifying, analyzing and determining the appropriateness of individuals earning large amounts of overtime.

   4. Attend monthly COMPSTAT sessions for issues concerning overtime usage.

E. Overtime abuses or failures to comply with the above standard operating procedures shall be subject to disciplinary action.

---

CHARLES H. RAMSEY
Commissioner

---

| FOOTNOTE # | GENERAL # | DATE SENT | REVISION |
|---|---|---|---|
| *1 | 5671 (bt)  5672 (al) | 01-30-09 | Phone Number Change |

EXHIBIT "B"



**DISTRICT ATTORNEY'S OFFICE**
THREE SOUTH PENN SQUARE
PHILADELPHIA, PENNSYLVANIA 19107-3499
(215) 686-8000

R. SETH WILLIAMS
DISTRICT ATTORNEY

December 3, 2012

Commissioner Charles Ramsay
Philadelphia Police Department
750 Race Street
Philadelphia, PA 19106

Dear Commissioner Ramsay:

    I am writing to inform you that in an exercise of prosecutorial discretion, the Philadelphia District Attorney's Office will no longer be using the following officers as witnesses in narcotics cases:

    Police Officer Thomas Liciardello
    Police Officer Brian Reynolds
    Police Officer John Speiser
    Police Officer Michael Spicer
    Police Officer Perry Betts
    Lieutenant Robert Otto

    Also the Philadelphia District Attorney's Office will no longer accept any narcotics cases for charging when any of these police officers is a necessary witness. Finally, we will no longer approve any search or arrest warrants on narcotics cases when any of these officers is the affiant, nor if the probable cause portion of the warrant contains any averments from any of these officers.

Very truly yours,

R. Seth Williams
District Attorney



EXHIBIT B

CERTIFICATE OF SERVICE

I, L. Kenneth Chotiner, Esquire, attorney for the Plaintiff, hereby certify that on this date the foregoing Amended Complaint, was via regular mail, postage prepaid, to the following:

Armando Brigandi, Esquire
Assistant City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
Armando.brigandi@phila.gov

Jeffrey M. Scott, Esquire
Archer & Greiner, P.C.
One Liberty Place
Thirty-Second Floor
1650 Market Street
Philadelphia, PA 19103
jscott@archerlaw.com

THE CHOTINER FIRM

Dated: April 24, 2013

L. KENNETH CHOTINER, LL.M.
Counsel for Plaintiff
1818 Market Street, Suite 3740
Philadelphia, PA 19103
215.564.6544